J. E. GAINES v. A. W. McALLISTER et al.

(Decided April 19th, 1898.)

*Action on Note—Trial—Instructions—Contract of Corporation.*

1. Where, in an action on a note, the answer alleged that the execution of the note was obtained by the fraudulent representations of the plaintiff in selling certain property, and the issue was raised whether the contract of sale was with defendants or with a third party who, plaintiff alleged, had bought from the plaintiff and sold to the defendants, and the testimony on such issue was conflicting, *Held*, that an instruction that, if the jury should find that the *plaintiff* made false representations concerning the property sold to the defendants, the plaintiff could not recover, was erroneous, being in

effect, an instruction that the contract of sale was between the plaintiff and defendants.

2. Whether a contract between "promoters" and stockholders of a corporation is void upon its face because not made by the directors is a question for the Court and not for the jury.

3. Where the "promoters" of a corporation held proxies of a majority of the shares of the company and organized the company and voted such shares in making a contract with the promoters by which the latter were to receive certain non-assessable paid-up stock and a large sum in cash upon certain contingencies. *Held*, that, while such facts may have been evidence, as badges of fraud, in an action to set aside the contract for fraud, the contract was not upon its face fraudulent.

4. In the trial of an action on a note given for the price of stock to which the false representations on the part of the seller were pleaded as a defence, an instruction that, if the plaintiff had obtained the stock so sold under a void contract with the corporation, he could not recover, was erroneous, not being pertinent to the issues.

CIVIL ACTION tried before *McIver, J.*, and a jury at July, 1896, Special Term of GUILFORD Superior Court. There was a verdict for the defendants, and plaintiff appealed. The facts and grounds of appeal sufficiently appear in the opinion.

*Mr. R. R. King* for plaintiff (appellant).
*Messrs. L. M. Scott* and *Shaw & Scales* for defendants.

MONTGOMERY, J.: The plaintiff commenced this action to recover the amount alleged to be due on a promissory note executed by J. S. McAllister to A. W. McAllister, and by A. W. McAllister endorsed to the plaintiff, dated January 8, 1891, and payable on or before the 8th day of December, 1891, in the sum of $500, with interest at the rate of 6 per cent. per annum. The execution of the note and its endorsement as alleged were admit-

ted by the defendants, but they aver in their answer
that the plaintiff through his fraudulent representations
and practices procured its execution, and that no value
was received by the debtors in the transaction out of
which it grew. The facts as they are averred in the
answer, and as to which the alleged fraudulent represen-
tations of the plaintiff in procuring the execution of the
note were made, are substantially these :

That in June, 1891, the defendant, A. W. McAllister,
as trustee for four persons, including the defendant, J.
S. McAllister, contracted with the plaintiff for the pur-
chase from him of three-fourths of a promoter's inter-
est, as it was called, in the Virginia Steel, Iron and Slate
Company, a corporation incorporated and organized un-
der the laws of Virginia; that the plaintiff represented
to A. W. McAllister that a promoter's interest in the
concern consisted of one hundred shares of full paid-up
stock of the company of the par value of one hundred
dollars per share, and also that it secured to the owner
thereof 55 town lots on the lands of the company in and
near the village of Howardsville, in the State of Virginia,
and $5,000 in money to be paid to the owner of the pro-
moter's stock out of the first net profits of the company;
and that the defendant, J. S. McAllister, and the three
other beneficiaries, represented by A. W. McAllister as
their trustee, were to have under the contract of pur-
chase the three-fourths interest, to-wit, 75 shares fully
paid up of the plaintiff's stock, three-fourths interest in
the 55 town lots, and three-fourths of the $5,000 of the
money to be derived out of the first net profits of the
company; that for the above consideration the four ben-
eficiaries, or their trustee for them, were to pay to the
plaintiff four thousand dollars, two thousand in cash and
two thousand dollars in their notes; that the two thou-

sand dollars was paid in cash and the notes executed and delivered, of which the one in suit is one; that the notes were executed by the makers to A. W. McAllister without any consideration from him to them, as was well known to the plaintiff when he received them, and that the notes were endorsed and delivered by the trustee to the plaintiff at the time the contract was made. The fraudulent representations which the defendants aver were made to them by the plaintiff are as follows:

"That at the time of making the contract the plaintiff fraudulently represented himself to be the *bona fide* owner of said promoter's interest of 100 shares of paid-up stock in the company, which he represented fraudulently and falsely to be of the value of $100 per share, and the company to be prosperous and in good condition and perfectly solvent, when he in fact knew said representations were false and untrue, he being at the time a director as well as the treasurer of the company; and that plaintiff also falsely and fraudulently represented said promoter's interest to consist of 100 shares of paid-up stock of the company, that the stock was worth $100 per share and secured to the owner thereof 55 town lots on the land of the company and $5,000 of the first net profits of the company, well knowing the same were not true; by which false and fraudulent representations the defendant and the other three persons above named who relied upon the truth thereof were induced to enter into the contract and to pay the money, to-wit: $2,000, and execute said notes, and to endorse and deliver them to the plaintiff."

The defendant, J. S. McAllister, also set up a counterclaim against the plaintiff for $500, which he had paid at the time of the making of the contract of purchase.

The plaintiff in his reply denied that he agreed to sell

the three-fourths of the promoter's interest described in the answer to A. W. McAllister, but alleged that he sold the same to one Watkins, who assigned his interest in the contract of sale to A. W. McAllister, trustee for J. S. McAllister, and the three other beneficiaries on the terms that the four persons should pay to the plaintiff the cash payment of $2,000, and secure the deferred payment of $2,000 by the notes; that he did not know anything of the relation of A. W. McAllister to J. S. McAllister or to the other three beneficiaries in the transaction when the sale was made, but that he believed they composed a syndicate of which A. W. McAllister was the head, formed to make this purchase, and that the notes passed to him for the deferred payments were executed to cover a part of the purchase price. And the plaintiff in his reply further stated that he never made any representations of any sort to A. W. McAllister in reference to the value of the promoter's interest; that he never had any negotiations with him or any of the beneficiaries; that he sold the stock to Watkins and never knew of McAllister and his associates in the transaction until after the sale had become a finality.

Upon the pleadings, the important questions raised were, first: Was the contract of sale of the promoter's interest made by the plaintiff to A. W. McAllister as trustee for the defendant, J. S. McAllister, and the other three beneficiaries, or was it made with Watkins in the manner and under the terms as alleged by the plaintiff? and, second, if the contract of sale was made to A. W. McAllister, trustee, did the plaintiff make representations which induced the defendant to purchase, and were such representations false within the knowledge of the plaintiff?

The evidence was conflicting on the question whether

Watkins was the purchaser of the stock or whether A. W. McAllister bought for J. S. McAllister and others; and yet his Honor substantially, in number 9 of the defendant's prayers for instructions which he gave and repeated in his general charge, instructed the jury to find that the plaintiff sold to A. W. McAllister as trustee and agent of J. S. McAllister—one of the main points at issue in the case.  There was error in this.

His Honor gave numbers 1 and 2 of the defendant's prayers for instructions which are in the following words: 1. "That the contract entered into by the promoters and stockholders of the Virginia Steel, Iron and Slate Company, made on December 15, 1890, is void, and the plaintiff obtained no interest thereunder, which he could sell or convey, and that no consideration passed from him to the defendants for the note sued on, and plaintiff can recover nothing in this action.  2. That if the jury find from the evidence that the promoters on December 15, 1890, held proxies of a majority of the shares of the company and organized the company, and voted the same in making the contract with the promoters under which the promoters were to receive $200,000 in non-assessable paid-up stock, $100,000 in cash upon the contingencies admitted upon the trial and detailed in the evidence, then the contract is fraudulent in law and void, and the plaintiff had no interest which he could sell or convey; and no consideration passed from him to the defendants upon the note sued on, and the plaintiff cannot recover." They ought not to have been given.

If the contract between the corporation and the promoters, made at the meeting of the company on the 15th of December, 1890, at Howardsville, Va., was void in law because the *stockholders* made the contract instead of the *directors*, the Court should have ruled the contract

to be void and not have submitted the question to the jury.

And the same is true of the second of the defendant's prayers for instruction (given). The matters set out there were admitted to be true in the answer, and in the reply they are emphasized as true; and if they, on their face, made the transaction fraudulent in law and void his Honor should have so held as a matter of law and not have submitted the matter to the finding of the jury. But they did not, upon their face, constitute legal fraud. They may have been evidence, as badges of fraud, in an action to set aside the contract of December 15, 1890, between the stockholders and the promoters for fraud; but it cannot be said that they constitute fraud in themselves, because, so far as we know (though it is highly improbable), the consideration given by the promoters to the stockholders was of such value as made it a *bona fide* transaction.

The instructions, too, were not pertinent to the pleadings and to the issues. There was no fraud averred by the defendants in the transaction that occurred in the meeting of December 15, 1890. The defendants charged fraud *only* in the representations made in the sale of the promoter's interest, and there was no pleading or motion on the part of the defendants intimating even that the contract of December 15, 1890, was made without authority and void, because the stockholders made it, and not the board of directors.

Our opinion on the main question in the case being such as we have expressed, we deem it unnecessary to consider the other matters brought up on the appeal.

There was error, for which there must be a

New trial.

DOUGLAS, J.: did not sit, having been of counsel.